IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KAY A. KINGSLEY, et al.,**

    **Plaintiffs,**

v.

**N. EUGENE BRUNDIGE,**

**et al.,**

    **Defendants.**

Case No. 2:09-CV-1090
JUDGE SARGUS
MAGISTRATE JUDGE KEMP

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' Motion for Judgment on the Pleadings (Doc. 15), and Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 20). For the reasons set forth herein, the motion for judgment on the pleadings is **DISMISSED** as moot,[1] and the motion to dismiss is **GRANTED**.

**I.**
**A.**

Plaintiffs Kay A. Kingsley ("Kingsley") and the Municipal Construction Equipment Operators Labor Council ("Union") bring the instant action against N. Eugene Brundige, Michael Verich, Robert Spada, James Sprague, Sherrie Passmore, and J. Russell Keith alleging various federal and state claims. At the time the amended complaint was filed, Brundige was the chairperson of the Ohio State Employment Relations Board ("SERB"), Verich was vice-chairperson, Spada was a member of SERB, Sprague was SERB's chief administrative law

---

[1] Defendants' Motion for Judgment on the Pleadings (Doc. 20) is dismissed as moot. This motion was filed before Plaintiffs were granted leave to amend their complaint. Accordingly, as the then-operative complaint has since been amended and no answer to the amended complaint has been filed, judgment on the pleadings would not be proper. However, the Court notes that dismissal of the motion for judgment on the pleadings is of little practical consequence, as Defendants have raised identical grounds for dismissal in both motions.

judge, Passmore was SERB's executive director, and Keith was SERB's General Counsel.[2] (Am. Compl. ¶¶ 10–11.)

## B.

The following facts are taken from Plaintiffs' amended complaint. In 1999, Kingsley was appointed as a full-time administrative law judge for SERB. (Am. Compl. ¶ 14.) At the time of her appointment, SERB's administrative law judges were in Ohio's classified civil service. However, in enacting House Bill 1 ("H.B. 1"), Ohio's 128th General Assembly amended Section 4117.02(H) of the Ohio Revised Code to remove the judges from the classified service, effective July 17, 2009. *See* OHIO REV. CODE § 4117.02(H), as amended by the 128th General Assembly, H.B. 1, § 101.01, eff. 7/17/2009.

In April 2007, the Union filed an unfair labor practice claim against the City of Cleveland, which was assigned to Kingsley. (Am. Compl. ¶ 19.) The Union's claim alleged that unfair labor practices had been committed by Frank Jackson, the mayor of Cleveland. (Am. Compl. ¶ 19.) Kingsley issued an order granting the Union's request for a subpoena duces tecum requiring Mayor Jackson to be deposed. (Am. Compl. ¶ 21.) The City, however, appealed the order to the SERB board members, who remanded the case to Defendant Sprague, SERB's chief administrative law judge, and Kingsley. (Am. Compl. ¶¶ 23–25.)

Kingsley alleges that following the remand, on August 26, 2009, Sprague approached her and suggested that Kingsley alter her decision granting the Union's request for the subpoena duces tecum. (Am. Compl. ¶ 26.) Kingsley refused, but offered to hold a conference call with counsel for the parties in an attempt to resolve the discovery dispute. (Am. Compl. ¶ 27.) Sprague agreed with this course of action. (Am. Compl. ¶ 27.) However, according to Kingsley,

---

[2] SERB's website indicates that since this suit was filed, SERB's membership has changed. However, these changes are not relevant to the Court's consideration of Defendants' motion to dismiss.

2

the day after her conversation with Sprague, a meeting was held between Sprague and Brundige. (Am. Compl. ¶ 28.) Shortly thereafter, Brundige and Passmore informed Kingsley that she was being laid off from her position. (Am. Compl. ¶ 28.) Several days later, on September 3, 2009, SERB granted the City of Cleveland's request for reconsideration of Kingsley's discovery order, and transferred the case from SERB's hearings section directly to the Board. (Am. Compl. ¶ 29.) Kingsley's termination became effective on October 30, 2009. (Am. Compl. ¶ 30.)

On November 4, 2009, Kingsley appealed her termination to the Ohio State Personnel Board of Review ("SPBR"), and her case before the SPBR was still pending at the time the amended complaint was filed. (Am. Compl. ¶ 32.) On November 11, 2009, Kingsley filed a complaint in mandamus in the Ohio Tenth District Court of Appeals, making facial and as-applied challenges to H.B. 1. (Am. Compl. ¶ 33.) That case also remained pending at the time the amended complaint was filed. (Am. Compl. ¶ 33.)

In the instant action, which was initially filed on November 30, 2009, Kingsley brings claims alleging that her termination violated her First Amendment Rights (first claim); an alleged right to "decisional independence" (second claim); and Ohio's open meeting statute (eleventh claim). She also brings claims for intentional infliction of emotional distress (eighth claim) and for damages arising from criminal acts (ninth claim). Kingsley also alleges that H.B. 1 violates the Ohio constitution (sixth and seventh claims) and was unlawfully applied to her in a retroactive fashion (tenth claim). The Union brings a claim alleging that the actions of Defendants in the Union's unfair labor practice complaint against the City of Cleveland violated the Due Process Clause of the Fifth Amendment as incorporated against the states by the Fourteenth Amendment (fourth claim). Finally, Plaintiffs bring a joint claim alleging that conflicts of interest at the SPBR and SERB will deprive them of their due process rights (fifth

claim). Plaintiffs seek a declaration that H.B. 1 is unconstitutional, a declaration that actions of SERB are void, a restraining order prohibiting SERB from hearing any cause until procedures allowing challenges to board member's impartiality are enacted, damages against Defendants in their individual capacities, reinstatement of Kingsley, and a restraining order prohibiting SERB from deciding the Union's unfair labor practice complaint.

Defendants now move to dismiss on various grounds, including their contention that the Court should abstain from deciding this case pursuant to *Younger v. Harris*, 401 U.S. 37 (1971); that the Eleventh Amendment deprives the Court of jurisdiction to decide various of Plaintiffs' claims; that Defendants are immune from the various state claims; that certain of the claims are moot; and that Defendants are shielded from Plaintiffs' federal constitutional claims by qualified immunity. As described *infra*, the Court grants Defendants' motion and dismisses Plaintiffs' claims.

## II.

As an initial matter, Plaintiffs have indicated that they do not contest dismissal of their third claim which alleges a violation of 42 U.S.C. § 1985. That claim is accordingly dismissed.

## III.

Defendants assert that this action should be dismissed pursuant to the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971). "Generally, the *Younger* abstention doctrine counsels a federal court to abstain from adjudicating a matter properly before it in deference to ongoing state proceedings." *Gilbert v. Ferry*, 401 F.3d 411, 419 (6th Cir. 2005). Three factors are considered in determining whether to abstain pursuant to *Younger*: "1) whether the underlying proceedings constitute an ongoing judicial proceeding, 2) whether the proceedings implicate important state interests, and 3) whether there is an adequate opportunity in the state

4

proceedings to raise a constitutional challenge." *Id.* The Court considers each of these factors in turn, and concludes that the *Younger* doctrine compels dismissal of Plaintiffs claims for equitable relief.

### A.

The applicable reference point for determining whether state judicial proceedings are "ongoing" for purposes of *Younger* abstention is the time when the federal complaint is filed. *Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir. 1986). Here, the amended complaint alleges that at the time of filing, Kingsley's appeal to the SPBR and her mandamus action in the Tenth District Court of Appeals were pending. Further, the Union's unfair labor practice claim remained pending before SERB. (*See* Am. Compl. at 18 (demanding a restraining order prohibiting SERB from hearing and deciding the Union's claim).) The Supreme Court has held that the Younger doctrine is applicable "to state administrative proceedings in which important state interests are vindicated." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986). In Part III.B *infra*, the Court concludes that important state interests are implicated by Plaintiffs' claims. Accordingly, the Court finds that the Union's case before SERB, Kingsley's appeal of her termination to the SPBR, and Kingsley's mandamus action constitute ongoing state judicial proceedings.

### B.

The second factor, whether the Ohio proceedings implicate important Ohio interests, is also present in this case as to the ongoing proceedings of both Kingsley and the Union. Kingsley's claims arise from the termination of her employment from an agency of the state of Ohio, and include issues of whether the statute passed by the Ohio legislature that removed her from the classified civil service violates the Ohio Constitution, and whether other Ohio statutes

5

were violated by SERB when it terminated her. The Union's claims involve the procedures used by SERB to adjudicate allegations of unfair labor practices committed by state or local employers against public employees. These issues are undoubtedly of great import and concern to the state of Ohio.

C.

The third factor, whether there is an adequate opportunity for Kingsley and the Union to raise constitutional challenges in the state proceedings, also is present as to Plaintiffs' claims for equitable relief, which must accordingly be dismissed. However, the Court also concludes that Plaintiffs' damage claims predicated on alleged constitutional violations should not be dismissed pursuant to *Younger*, but should instead be stayed, unless dismissed on other grounds.

While dismissal is ordinarily the adequate action for claims brought in federal court seeking to enjoin state action, decisions of the Supreme Court and Courts of Appeal recognize that claims for damages that possibly fit the *Younger* paradigm are best stayed pending the outcome of the related state judicial proceedings. In *Deakins v. Monaghan*, 484 U.S. 193 (1988), the Supreme Court stated:

> Petitioners argue that the *Younger* doctrine—which requires a federal court to abstain where a plaintiff's federal claims could be adjudicated in a pending state judicial proceeding—applies to complaints seeking only monetary relief. Petitioners further argue that it is within the District Court's discretion to dismiss rather than stay a federal complaint for damages and fees where abstention is required. We need not decide the extent to which the *Younger* doctrine applies to a federal action seeking only monetary relief, however, because even if the *Younger* doctrine requires abstention here, the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding.

*Id.* at 202. A similar holding was reached by the Sixth Circuit in *Carroll v. City of Mount Clemens*, 139 F.3d 1072 (6th 1998). *See id.* at 1075–76 ("The District Court should stay Carroll's federal lawsuit to protect against the possibility that she could be deprived of the

6

opportunity to present the merits of her damages claims in state court.") Finally, in *Addiction Specialists, Inc. v. The Township of Hampton*, 411 F.3d 399 (3rd Cir. 2005), the Third Circuit upheld the district court's dismissal, pursuant to the *Younger* doctrine, of claims seeking injunctive and declaratory relief related to ongoing state proceedings with important state interests at stake, but reversed dismissal of claims seeking damages. *See id.* at 415.

At this stage of its analysis, the Court must sort Plaintiffs' ten remaining claims into groups consisting of those seeking equitable relief and those seeking legal damages. A review of Plaintiffs' amended complaint reveals that legal damages are sought by claims one, two, eight, and nine, while claims four, five, six, seven, ten, and eleven seek equitable remedies to allegedly illegal actions taken by Defendants.

Turning first to the claims for equitable relief, the Court concludes that these claims must be dismissed under the *Younger* doctrine. Pursuant to the Ohio Revised Code, aggrieved parties may appeal final orders of SERB "to the court of common pleas of any county where the unfair labor practice in question was alleged to have been engaged in, or where the person resides or transacts business." OHIO REV. CODE § 4117.13(D). SERB issued a final opinion dismissing the Union's unfair labor practice case in March 2010, and the Union apparently never exercised its appeal right. *See State Employment Relations Bd. v. City of Cleveland*, SERB Opinion No. 2010-006 (Mar. 11, 2010). Additionally, Ohio law allows parties to appeal final decisions of the SPBR to the Franklin County Court of Common Pleas. *See* OHIO REV. CODE § 119.12. The Parties represent that Kingsley has filed an appeal of the SPBR's final decision.

"[I]t is sufficient . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Dayton Christian Sch.*, 477 U.S. at 629 (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 436 (1982)). Here, Plaintiffs have

7

not demonstrated that they were precluded from raising the constitutional issues in their fourth and fifth claims on appeal from SERB and the SPBR. *See id.* ("Section 4112.06 of [the Ohio Revised Code] provides that any 'respondent claiming to be aggrieved by a final order of the commission . . . may obtain judicial review thereof.' Dayton cites us to no Ohio authority indicating that this provision does not authorize judicial review of claims that agency action violates the United States Constitution.") Similarly, Plaintiffs have made no showing that their claims for equitable relief predicated on Ohio law were not or could not be raised in the state proceedings. Accordingly, in the Court's view, Plaintiffs' claims for equitable relief—claims four, five, six, seven, ten, and eleven—must be dismissed pursuant to *Younger*.

However, the remaining claims are brought for damages, with claims one and two being made pursuant to 42 U.S.C. § 1983 and alleging violations of the United States Constitution, and claims eight, nine, an in part, claim two, being made pursuant to Ohio law. In the Court's view, these claims fall within the holdings of *Deakins* and *Carroll*, and, although they may otherwise come within the ambit of the *Younger* doctrine, staying these claims in lieu of dismissing them would be appropriate. For instance, while the claims seeking equitable relief consist of defenses that are likely otherwise available to Plaintiffs in the state proceedings, there is no indication that it would have been appropriate for Kingsley (as the claims for legal damages are all made solely by her) to append § 1983 damage claims to an action before the SPBR or to an appeal of the SPBR's decision to the Franklin County Court of Common Pleas. This is not the end of the Court's analysis, however, with regard to Kingsley's claims for damages. These claims will only be stayed pending the outcome of the state proceedings if they are not otherwise dismissed on other grounds raised by Defendants.

8

IV.

Defendants contend that damage claims against them are precluded by the Eleventh Amendment, which prohibits suits against the states for money damages in federal courts. However, as correctly noted by Plaintiffs, the Eleventh Amendment does not shield state officials from claims for money damages made against them in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 23 (1991). Here, as Plaintiffs have sufficiently alleged that the claims against Defendants are made in their individual capacities, (Am. Compl. at 18), Defendants' argument that the Eleventh Amendment shields them from Kingsley's damage claims is without merit.

V.

Defendants assert that Plaintiffs' eighth and ninth claims, claiming damages for intentional infliction of emotional distress and criminal conduct, respectively, and those portions of Plaintiffs' second claim arising from state law, are jurisdictionally barred because Plaintiffs have not obtained a ruling from the Ohio Court of Claims that Defendants' are not immune for their conduct. The Court agrees.

"[W]hen faced with a claim of immunity to a pendent state claim, federal courts look to the appropriate state law to ascertain the nature of the immunity given." *Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989). Section 9.86 of the Ohio Revised Code provides that:

> Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

OHIO REV. CODE § 9.86. Pursuant to Section 2743.02 of the code:

> A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.

OHIO REV. CODE § 2743.02(F). "Under Ohio law, then, state employees may not be sued unless and until it has been determined by the Court of Claims that they are not entitled to immunity." *Haynes*, 887 F.2d at 704. Here, as Plaintiffs have failed to obtain a determination from the Ohio Court of Claims that Defendants are not entitled to immunity, the Court lacks supplemental jurisdiction over Plaintiffs' eighth and ninth claims, and those portions of their second claim arising under Ohio law. *See id.* at 705. Those claims must accordingly be dismissed.

## VI.

Finally, Defendants assert that Plaintiffs' remaining claims, which arise under the United States Constitution, should be dismissed pursuant to the doctrine of qualified immunity. These claims include Plaintiffs' first claim, which alleges violations of the First Amendment, and those portions of Plaintiffs' second claim arising under the Due Process Clause of the Fourteenth Amendment.[3] While Defendants' previously asserted grounds for dismissal have been jurisdictional in nature, the Court considers the qualified immunity defense to be made pursuant to Rule 12(b)(6).

---

[3] The Court notes that Plaintiffs actually specify that their second claim arises under "the Fifth Amendment of the United States Constitution made applicable to the states through the Fourteenth Amendment." (Am. Compl. ¶ 43.) Technically, this statement is incorrect as the incorporation of the Due Process Clause of the Fifth Amendment against the states through the Fourteenth Amendment has been unnecessary given the Fourteenth Amendment's own Due Process Clause, which is made directly applicable to the states. *See* U.S. CONST. amend. XIV, § 1. In the Court's view, this technical error is overcome by Plaintiffs' reference to the Fourteenth Amendment.

10

A Rule 12(b)(6) motion requires dismissal if the complaint fails to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it] [is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (quoting *Twombly*, 550 U.S. at 55) (internal quotations omitted).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). If qualified immunity is applicable, the official is not only immune from damages, but is immune from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Qualified immunity gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (internal quotations omitted). The plaintiff in a civil action bears the burden of establishing that defendants are not entitled to qualified immunity, and must demonstrate that a constitutional right was violated and that the right was clearly established. *Id.* Defendants have focused their qualified immunity arguments on the first prong of the analysis—asserting that Plaintiffs have failed to allege constitutional violations in their first and second claims.

11

A.

Turning to Plaintiffs' first claim, Kingsley asserts that she was terminated from her position as an administrative law judge by Defendants because she refused to change the discovery order she had issued in the Union's unfair labor practices case when pressured to do so. According to Kingsley, her termination on these grounds violated her First Amendment right to freedom of expression. According to Defendants, however, Kingsley's allegations fall squarely within the holding of the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006) and therefore must be dismissed.

A "[s]tate's interests as an employer in regulating the speech of its employees 'differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.'" *Connick v. Myers*, 461 U.S. 138, 140 (1983) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). However, "a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Id.* In certain instances, public employees are afforded protection by the First Amendment to speak as "citizen[s] addressing matters of public concern." *Garcetti*, 547 U.S. at 417.

In *Garcetti*, Richard Ceballos, a deputy district attorney, brought suit against his employer pursuant to § 1983, claiming that the district attorney's office retaliated against him because of expression protected by the First Amendment. *See id.* at 414–15. The expression at issue consisted of Ceballos preparing a memo to his supervisors recommending that a case be dismissed based on what Ceballos considered to be an improperly obtained search warrant. *Id.* at 413–15. The Supreme Court held that Ceballos's speech was not entitled to First Amendment protection. In so doing, the Court reiterated that a threshold inquiry—required by *Pickering* and its progeny—in cases involving the speech of public employees is whether the employee's

12

speech is made in his or her capacity as a citizen. *Id.* at 418. The Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. In concluding that Ceballos's expressive conduct was made pursuant to his official duties, the Court noted that:

> Ceballos did not act as a citizen when he went about conducting his daily professional activities, such as supervising attorneys, investigating charges, and preparing filings. In the same way he did not speak as a citizen by writing a memo that addressed the proper disposition of a pending criminal case. When he went to work and performed the tasks he was paid to perform, Ceballos acted as a government employee. The fact that his duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance.

*Id.* at 422.

In the instant case, it is beyond question that Kingsley's work as an administrative law judge for SERB involved expression concerning matters of public concern as SERB serves as a forum for the adjudication of labor disputes between Ohio public employers and their employees. However, it is also beyond question that Kingsley's expressive activities, which she alleges are protected by the First Amendment, were made pursuant to her official duties as an administrative law judge. Accordingly, her first claim fails to allege a violation of the First Amendment and must be dismissed.

Plaintiffs contend that the instant case is distinguishable from *Garcetti* in that *Garcetti* dealt with alleged punishment for speech made by Ceballos, whereas here, Defendants' alleged retaliation occurred because Kingsley refused to be compelled to speak. However, the Court is unable to look past the broad holding in *Garcetti*, and concludes that the rationale behind that holding—i.e. that governments' ability to function efficiently would be hindered if all speech squarely within public employees' job responsibilities were afforded constitutional protection—

13

is equally applicable to cases where employees are required to speak by their employers as to matters within the employees' official duties. Further, the facts alleged by Kingsley blur the distinction between active expression on the one hand, and a refusal to speak on the other, as Kingsley's claim of compulsion necessarily derives from her original expressive conduct—her decision granting the Union's discovery requests. This problem illustrates the potential conceptual difficulty of carving out an exception to *Garcetti* in cases where public employees are compelled to speak as part of their official duties.

Plaintiffs' reliance on *Parate v. Isibor*, 868 F.2d 821 (6th Cir. 1989) is misplaced. There, the Sixth Circuit reversed the district court's dismissal of Parate's First Amendment claim. Parate, a university professor, claimed, *inter alia*, that Tennessee State University, his employer, had infringed his First Amendment Right to academic freedom when the university compelled him to change grades he had previously assigned to students. *See id.* at 823–25. The Court agreed with Parate, and held that:

> the individual professor may not be compelled, by university officials, to change a grade that the professor previously assigned to her student. Because the individual professor's assignment of a letter grade is protected speech, the university officials' action to compel the professor to alter that grade would severely burden a protected activity.

*Id.* at 828. According to Kingsley, as with Parate, she was compelled to speak and her refusal to do so resulted in her termination. However, in this Court's view, the Sixth Circuit's decision in *Parate* must be read to be limited to the academic environment and is therefore distinguishable from the instant case. That Court's holding is preceded by a lengthy discussion of the concept of academic freedom within the First Amendment context. *See id.* at 827 ("Although judicial concern has been expressed for the academic freedom of the university, the courts have also afforded substantial protection to the First Amendment freedoms of individual university

14

professors.") While the decision does make reference to the issue of compelled speech, see id. at 828 ("[i]f the speech of a nontenured professor is compelled by a university administrator, then the professor is not without redress for this violation of her constitutional rights"), the thrust of the opinion is focused on the concept of academic freedom.[4]

For the foregoing reasons, Plaintiffs' first claim fails to state a First Amendment violation and must accordingly be dismissed.

**B.**

Plaintiffs' second claim alleges violations of Kingsley's Fourteenth Amendment due process rights. Due process has two components, substantive and procedural. *See Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000). Procedural due process consists of an individual's right to fair procedures before the individual can be deprived of life, liberty, or property by a state. *See id.* Substantive due process provides heightened protection against government interference with fundamental rights and liberty interests. *See id.* Plaintiffs assert that their second claim sufficiently alleges that Defendants violated Kingsley's fundamental rights to be free of conduct that shocks the conscience and her right to "decisional independence." However, Plaintiffs' amended complaint makes no allegation of a violation of the purported right to be free from conduct that shocks the conscience. Accordingly, even if such a fundamental right were found to exist, Plaintiffs' second claim fails to properly allege a violation of such a right.

Plaintiffs have also cited no authority to support their contention that a fundamental right to decisional independence has ever been recognized. As stated by the Sixth Circuit in *Seal*:

---

[4] Plaintiffs have also cited *Perry v. McGinnis*, 209 F.3d 597 (6th 2000), where the Sixth Circuit reversed the dismissal of the First Amendment claim of a prison hearing officer, who alleged that he was terminated from his position because of his decisions in the administrative hearings of prisoners. *See id.* at 603. However, the Court notes that this case is also distinguishable from the instant case in that Perry's function as a prison hearing officer involved deciding issues intertwined with the constitutional rights of inmates, whereas Kingsley's position as an administrative law judge in labor disputes does not similarly touch on issues of a constitutional dimension.

15

> The list of fundamental rights and liberty interests—which includes the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to terminate one's pregnancy, and possibly the right to refuse unwanted lifesaving medical treatment, . . . however, is short, and the Supreme Court has expressed very little interest in expanding it.

*Id.* at 574–75 (citation omitted). Even if such a right were found to exist within the liberty component of the Fourteenth Amendment's Due Process Clause, it cannot be said to have been clearly established for qualified immunity purposes. Finally, to the extent that Plaintiffs' second claim can be construed as alleging a procedural due process violation, Plaintiffs' have cited no authority to indicate that Plaintiff possessed a property interest in decisional independence arising under Ohio law. In this regard, Plaintiffs' reliance on *Stephens v. Merit Systems Protection Board*, 986 F.2d 493 (Fed. Cir. 1993) is misplaced, as there, the Court of Appeals for the Federal Circuit refrained from deciding whether a *federal* administrative law judge had a cognizable property interest in decisional independence. *See id.* at 497–98. For these reasons, Plaintiffs' second claim must also be dismissed pursuant to Rule 12(b)(6).

## VII.

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings (Doc. 15) is **DISMISSED**, and Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 20) is **GRANTED**. Plaintiffs' amended complaint is dismissed.

**IT IS SO ORDERED**

3-18-2011
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

16